IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| STEVEN LEWIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | NO. 3:17-cv-000019 |
| | ) | |
| HAROLD M. CALVERT, M.D., et al., | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE BROWN |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Defendants' Motion for Judgment as a Matter of Law. (Doc. No. 90). Plaintiffs filed a Response in Opposition (Doc. No. 98) and Defendants filed a Reply. (Doc. No. 100).[1] For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part.

### I. FACTUAL BACKGROUND

Dr. Don Lewis, an optometrist, had two optometry practices, one in Clarksville and one in Franklin ("the Practices"). (Doc. No. 46 at PageID# 2047-2048; Doc. No. 48 at ¶¶ 10-16). Dr. Lewis' son, Steven, and daughter-in-law, Julie ("collectively Plaintiffs") helped operate and manage the Practices until Dr. Lewis' death in January of 2013. (*Id.*; Doc. No. 12 at ¶ 23). Dr. Lewis had subleased the spaces for the Practices from Luxottica Retail North America, Inc. ("Luxottica"). (Doc. No. 46 at PageID# 2047-2048; Doc. No. 48 at ¶¶ 11; 14).

---

[1] In accordance with Local Rule 56.01, the parties filed what purport to be statements of facts, responses, and replies. (Doc. No. 101). The express purpose of Local Rule 56.01 is "to assist the Court in ascertaining whether there are any material facts in dispute." The parties' filings under Local Rule 56.01 (b), (c), and (d) provide no such assistance. Accordingly, the Court has relied on the recitation of facts in the parties' briefs and support from the record for those facts, but has not attempted to navigate the morass created by both parties in the filings made under Local Rule 56.01 (b), (c), and (d).

Plaintiffs were not eligible to assume Dr. Lewis' subleases with Luxottica following his death because neither of them were medical doctors or optometrists. (Doc. No. 94-2 at PageID# 2616-2618; Doc. No. 94-6 at PageID# 2871; Doc. No. 94-9 at PageID# 3005). Under the terms the subleases, Luxottica had the right to select its own candidate to assume the subleases, but the estate had the option to present candidates to Luxottica for consideration. (Doc. No. 94-3 at PageID# 2706-2709). Plaintiffs presented ophthalmologist Defendant Harold M. Calvert, M.D. ("Dr. Calvert") to Luxottica as the "owning doctor candidate" to assume the subleases. (*Id*. at PageID# 2742). Luxottica accepted the proposal and required Dr. Calvert and Dr. Lewis' estate to sign a Consent, Subordination, and Guarantee Agreement. (Doc. No. 94-2 at PageID# 2655; Doc. No. 94-3 at PageID# 2736-2737).

Dr. Calvert is the sole owner and only shareholder of Defendant Calvert Ophthalmology Center, P.C. ("COC"). (Doc. No. 94-10 at PageID# 3008-3009). Dr. Calvert/COC purchased the Practices' patient records and certain assets from Dr. Lewis' estate, and signed a sublease with Luxottica for the Practices. (Doc. No. 94-3 at PageID# 2724-2729; 2736-2737; Doc. No. 98-13 at PageID# 3767; Doc. No. 94-4 at PageID# 2756-2768). Dr. Calvert was the only party to execute Luxottica's sublease as sublessee and the only party to execute a personal guarantee of the sublease. (Doc. No. 94-4 at PageID# 2756-2768; 2775).

After Dr. Calvert acquired the Practices, Plaintiffs continued to perform operation and management services at the Practices. (Doc. No. 5-1 at ¶ 1). At no time did Plaintiffs, Dr. Calvert, or COC enter into a written agreement outlining the terms of their relationship, detailing the compensation Plaintiffs were to receive, or providing any guarantee of a period of employment for Plaintiffs. (Doc. No. 94-2 at PageID# 2622-2624; 2664). Dr. Calvert determined how the net profits amounts would be calculated, the amount of net profits that would be paid to Plaintiffs,

when the amounts would be paid, and whether to withhold any payments. (Doc. No. 94-2 at PageID# 2658; 2661-2663; 2687). COC issued 1099s or W-2s for all payments issued to Plaintiffs. (Doc. No. 94-7; Doc. No. 94-8 at PageID# 2953-2993).

In September of 2016, Julie stopped performing management services for the Practices after Defendant Sheryl Calvert notified her that her employment was being suspended for misconduct. (Doc. No. 94-8 at PageID# 3003; Doc. No. 102-6 at PageID# 3927-3929). In October of 2016, Steven stopped performing management services for the Practices following a disagreement he had with Dr. Calvert about the amount of net profits he wanted to be paid for his work. (Doc. No. 94-2 at PageID# 2700-2703).

Plaintiffs claim they entered into a partnership agreement with Dr. Calvert in June of 2013 to carry on as co-owners of the optometry Practices. (Doc. No. 12 at ¶¶ 1; 30). On February 12, 2017, Plaintiffs filed an Amended Complaint in this action alleging breach of the partnership agreement, breach of fiduciary duty, procurement and inducement of breach of contract, and breach of an equipment lease agreement. (*Id*. at ¶¶ 70-75, 84-97). Plaintiffs also seek recovery under a quantum meruit theory and to have the partnership dissolved and wound down. (*Id*. at ¶¶ 76-83). Defendants move for summary judgment on all claims. (Doc. No. 90).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element

of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

#### A. Existence of an Implied Partnership

Defendants argue they are entitled to summary judgment on Plaintiffs' claims for breach of the partnership agreement, breach of the fiduciary duty to the partnership, for dissolution and winding up of the partnership, and for inducement of breach of contract because Plaintiffs cannot establish the existence of an implied partnership. (Doc. No. 90 at 1-2).

Under Tennessee law, a "partnership" is an association of two or more persons to carry on as co-owners of a business or other undertaking for profit. Tenn. Code Ann. § 61–1–101(7). A partnership can only be created pursuant to a contract of partnership, though such an agreement may be either express or implied. *Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn.1991). When ascertaining whether a partnership exists, courts must determine the intention of the parties "and the controlling

intention in this regard is that [which is] ascertainable from the acts of the parties." *Id*. "It is the intent to do the things which constitute a partnership that determines whether individuals are partners, regardless if it is their purpose to create or avoid the relationship…" *Id*. (internal citation omitted). Thus, before a partnership may be implied, the circumstances must show that the parties intended to share the profits from their business relationship. *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 470 (Tenn. Ct. App. 2003). However, a person who receives a share of profits should not be presumed to be a partner when the profits were received in payment "[f]or services as an independent contractor or of wages or other compensation to an employee." Tenn. Code Ann. § 61-1-202(c)(3)(B).

When a partnership agreement is not written, the proponent of the partnership must prove the existence of the partnership by clear and convincing evidence. *Bowman v. Benouttas*, 519 S.W.3d 586, 600 (Tenn. Ct. App. 2016). "Generally, what will constitute a partnership is a matter of law, but whether a partnership exists under conflicting evidence is one of fact." *Wyatt v. Brown,* 281 S.W.2d 64, 67 (Tenn. Ct. App. 1955).

The parties agree that Plaintiffs operated and managed the Practices for Dr. Calvert and COC and in exchange for their services Plaintiffs were compensated with a division of net profits of the business. (Doc. No. 5-1 at ¶ 1; Doc. No. 91 at 1). Defendants argue Plaintiffs' receipt of profits does not give rise to an inference of a partnership under Tenn. Code Ann. § 61-1-202 because the profits Plaintiffs received were compensation for the management services they provided as independent contractors. (Doc. No. 91 at 20). Defendants assert that Dr. Calvert: (1) exercised control over COC's bank accounts; (2) had sole authority to determine when to issue a payment and what amount the payment would be; (3) was the only party on the sublease; (4) was

the only party who provided Luxottica a personal guarantee; and (5) had authority to dictate aspects of Plaintiffs' job performance is further evidence that there was no implied partnership. (*Id*. at 19).

In response, Plaintiffs argue "the facts surrounding the formation of the business relationship, the sharing of profits, and the Plaintiffs' operation and management of the Practices" support the finding of an implied partnership. (Doc. No. 98 at 13). Specifically, Plaintiffs assert there is evidence of the parties using the word partnership at various times surrounding the formation of the business relationship. (*Id*. at 14-15). However, the terminology used to describe the relationship is not evidence of the existence of a partnership. *See Bass v. Bass*, 814 S.W.2d 38, 41 (Tenn. 1991). Plaintiffs also produce evidence that the individual promoted to operations manager for COC in January of 2017 receives compensation of approximately $50,000 per year. (Doc. No. 98-11 at PageID# 3713-3714; 3725-3726). Plaintiffs argue Defendants have no "credible explanation" for paying Plaintiffs such a large share of the profits compared to what the current practice manager receives as compensation. (Doc. No. 98 at 15).

The Court finds no genuine issue of material fact regarding the existence of an implied partnership. Even viewing the evidence in the light most favorable to Plaintiffs, the Court finds the evidence does not support Plaintiffs' allegation that they entered into a partnership agreement with Dr. Calvert and/or COC to carry on as co-owners of the two optometry Practices. Accordingly, the Court **GRANTS** summary judgment to Defendants as to Count I of Plaintiffs' Amended Complaint. Because Counts II, III, and V are contingent on the existence of a partnership, the Court also **GRANTS** summary judgment to Defendants as to those claims.

### B. Quantum Meruit

Plaintiffs argue their unjust enrichment claim is based on Dr. Calvert and COC having received the value of the business and stream of income from the Practices without consideration

or repayment to Plaintiffs, the receipt of services from Plaintiffs without compensation, and the goods and services received at the expense of Steven's American Express debt. (Doc. No. 98 at 20). Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same. *River Park Hosp., Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 173 S.W. 3d 43, 57 (Tenn. Ct. App. 2002). Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between the parties, regardless of their assent thereto. *Paschall's, Inc. v. Dozier,* 407 S.W.2d 150, 154 (1966).

Under Tennessee law, "[t]he elements of an unjust enrichment claim are: 1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. The most significant requirement of an unjust enrichment claim is that the benefit to the defendant be unjust." *Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (citations omitted) (quoting *Paschall's*, 407 S.W.2d at 155). However, the equitable doctrine of *quantum merit* can be a basis for recovery only when there is "no existing, enforceable contract between the parties covering the same subject matter." *Reed's Track Hoe & Dozier Service v. Dwyer*, 2012 WL 6094127, at *3 n. 3 (Tenn. Ct. App. 2012) (quoting *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 197–98 (Tenn. 2001)). "The theory of unjust enrichment is an *alternative* to [a] [p]laintiff's breach of contract claim." *Thompson v. American General Life and Acc. Ins. Co.*, 404 F. Supp. 2d 1023, 1029 (M.D. Tenn. 2005) (emphasis in original).

Defendants assert Plaintiffs' quantum meruit claims should be barred by the doctrine of unclean hands. (Doc. No. 91 at 21-23). The doctrine of unclean hands provides that "he who comes

into Equity must come with clean hands" and enables a court to prevent a party from profiting from his or her own misconduct. *Emmit v. Emmit*, 174 S.W.3d 248, 252 (Tenn. Ct. App. 2005). In support of their argument, Defendants present evidence of Plaintiffs taking without permission more than $79,000 in rebate/growth checks from vendors for COC's purchases of contact lenses and making false representations to the Court in this action pertaining to the American Express debt they seek equitable relief from. (Doc. No. 91 at 22-23; Doc. No. 94-2 at PageID# 2690-2691; Doc. No. 94-6 at PageID# 2887-288; Doc. No. 95-1 at PageID# 3100; Doc. Nos. 52-2, 52-3, 52-5). In response, Plaintiffs assert "Dr. Calvert would have received about 30% of the $79,000" and that the Court has already addressed the alleged false statements referenced by Defendants through its Order denying Defendants' motion for sanctions pertaining to the same statements. (Doc. No. 98 at 19-20).

Additionally, Defendants argue quantum merit does not apply to Plaintiffs' claim that Dr. Calvert was unjustly enriched with the value and stream of income of the Practices because the parties signed written and enforceable contracts accomplishing the transfer of the Practices, and Dr. Calvert provided Plaintiffs with well-paying jobs as operations managers in exchange for the transfer of the Practices. (Doc. No. 91 at 23-24 and Doc. No. 98-13 at 3). Defendants provide evidence that COC paid Plaintiffs $230,400 in 2013, $294,094 in 2014, $416,294.86 in 2015, and $159,330.14 in 2016 as compensation. (Doc. No. 94-11 at PageID# 3079; Doc. No. 94-7; Doc. No. 94-8 at PageID# 2953-2993). Defendants argue this evidence demonstrates Dr. Calvert paid Plaintiffs more than one million dollars over the course of the time period at issue, and therefore he cannot be said to have retained any benefit of Plaintiffs' services without paying for it. (Doc. No. 91 at 23-24).

In response, Plaintiffs argue Dr. Calvert and COC accepted the benefit of Plaintiffs' efforts throughout 2016 without proper sharing of distributions, (Doc. No. 98 at 19 and Doc. No. 98-3 at PageID# 3413), and provide evidence that Dr. Calvert took a net profit distribution in June of 2016 without splitting any of the profits with Plaintiffs. (Doc. No. 98 at 19; Doc. No. 98-9 at PageID# 3657-3658; Doc. No. 98-10 at PageID# 3688). Additionally, Plaintiffs assert Dr. Calvert diluted their profit distribution in 2013 by taking a $25,000 unilateral distribution without paying it back, (Doc. No. 98 at 19; Doc. Nos. 98-21 and 98-22). Plaintiffs also provide evidence that Defendants failed to make payments or reimburse Plaintiffs for business-related expenses incurred on an American Express credit card. (Doc. No. 98-3 at Doc. No. 3413).

Because of the existence of valid contracts covering the transfer of the Practices to Dr. Calvert, the Court **GRANTS** summary judgment to Defendants on Plaintiffs' unjust enrichment claim for the value of the Practices. The Court finds, however, genuine issues of material fact exist as to Plaintiffs' remaining unjust enrichment claims. Accordingly, Defendants' motion for summary judgment on this ground is **DENIED**. The Court also finds the existence of disputed material facts concerning Defendants' "unclean hands" defense such that summary judgment is not appropriate based on that defense.

**C. Breach of Equipment Lease**

Plaintiff Steven Lewis asserts a breach of contract claim against Defendant COC based upon alleged default of a lease for equipment used in the Practices and the failure to return the equipment upon termination of the lease. (Doc. No. 12 at 2; ¶¶ 90-97). To establish a breach of contract under Tennessee law, a plaintiff must show "(1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the

breached contract." *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.,* 410 S.W.3d 810, 816–17 (Tenn. Ct. App. 2011).

Defendants argue that Plaintiffs cannot establish a claim for breach of the equipment lease because the agreement lacked consideration and was an illegal agreement in violation of public policy. (Doc. No. 91 at 26-27). Defendants provide evidence that Plaintiff's alleged receipt of the equipment from Dr. Lewis as compensation or a gift was not recorded on the corporate tax returns for Dr. Lewis' practice or Plaintiffs' joint tax returns, (Doc. No. 94-7; Doc. No. 94-8 at PageID# 2953-2988; Doc. No. 95-6 at PageID# 3178-3180), and that Plaintiff requested COC to assign a portion of his compensation to equipment rental for purposes of reducing Plaintiffs' tax liability. (Doc. No. 94-2 at PageID# 2674-2676). Defendants assert this evidence shows the lease agreement lacked consideration because Plaintiffs did not actually own any of equipment to lease, and that the lease was merely a vehicle Plaintiffs used to avoid payment of taxes. (Doc. No. 90 at 3). In response, Plaintiff presents his own deposition testimony as evidence that the equipment was given to him and Julie as part of their compensation package with Dr. Lewis. (Doc. No. 98 at 22; Doc. No. 98-5 at PageID# 3464). Additionally, Plaintiffs assert Defendants are barred from arguing the lease is unenforceable as illegal because COC ratified the agreement with full knowledge of its purpose. (Doc. No. 98 at 22).

Viewing the evidence in the light most favorable to Plaintiffs, the Court finds genuine issues of material fact exist as to ownership of the leased equipment and the existence of an enforceable contract. Accordingly, Defendants' motion for summary judgment on this ground is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE